IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEC RESOURCES, LLC | : CIVIL ACTION |
| | : |
| | : |
| v. | : |
| | : NO. 17-223 |
| APPLE, INC. | : |

# MEMORANDUM

**KEARNEY, J.**  September 15, 2017

A California citizen asks we transfer venue of this patent infringement case filed by a Texas citizen and now being pursued by a North Dakota citizen based on convenience when none of the witnesses or documents have Delaware connections.  Parsing through sworn facts, we carefully consider whether another venue is more appropriate to timely resolve a dispute over property created in California or Taiwan between citizens from states other than Delaware.  While this Court welcomes the chance to resolve complex patent disputes with proper venue, when a Californian asks to transfer venue in a case brought by a Texan, we carefully evaluate the facts and apply our court of appeals' guidance.  Having applied this guidance and rejecting the claim the California citizen waived the convenience of venue argument by waiting until after we ruled on dispositive motions, we enter the accompanying Order granting the California citizen's motion to transfer to the far more convenient district court in the Northern District of California.

**I.  Facts relating to venue.**

Before selling its rights to MEC Resources LLC, Prowire LLC owned United States Patent No. 6,137,390 titled "Inductors with Minimized EMI Effect and the Method of Manufacturing the Same." ("'390 patent").[1]  Prowire alleged Apple, Inc. infringes on the '390

patent by "making, using, importing, selling, and offering for sale" products, such as the iPad 4 tablet computer containing an inductor incorporating Claim 1 and Claim 11 of the '390 patent.[2] Prowire is a Texas limited liability company but we do not know its principal place of business other than it is not in Delaware.[3] The last known contact information for the inventors of the '390 patent is Hsinchu, Taiwan.[4] The prosecuting attorney for the '390 patent is in Honolulu, Hawaii.[5] Prowire obtained the '390 patent from a Taiwanese company called Fuco Technology Co., LTD.[6]

After suing, Prowire "transferred all right, title, and interest" in the '390 patent to MEC Resources, LLC and we substituted MEC for Prowire.[7] MEC describes itself as "a small patent-holding company."[8] MEC is a North Dakota limited liability company with no presence in Delaware.[9] MEC's chief executive officer is Clarence O'Berry and its chief operating officer is Frank Driscoll.[10] Mr. Driscoll and Mr. O'Berry swear MEC's principal office is in New Town, North Dakota and physical papers, including patent documents and MEC's organizational documents, are located in New Town.[11] Mr. Driscoll swears MEC had no revenue in the calendar year of 2016 and no revenue to date in calendar year 2017.[12] Mr. Driscoll swears he lives in Waterford, Michigan and it would more convenient for him to travel to Delaware than San Francisco, California.[13] Mr. O'Berry swears he lives in Minot, North Dakota. He anticipates being MEC's Fed. R. Civ. P. 30(b)(6) representatives and it would more convenient for him to travel to Delaware than San Francisco, California.[14]

Apple is a California corporation with its principal place of business in Cupertino, California.[15] Apple is a large, multibillion dollar company with retail stores through the United States.[16] Michael Jaynes, an Apple Finance Manager, swears its "management and primary resource and development facilities" along with 30,000 of its employees are located in the

Northern District of California.[17] Mr. Jaynes also swears Apple does not manufacture the alleged infringing inductors but purchases them from a third party located in Taiwan.[18] After reasonable investigation, Mr. Jaynes located three employees with knowledge about the alleged infringing inductors all located in Cupertino, California.[19] Mr. Jaynes swears the three employees stated the other employees with knowledge about inductors and the documents are located in California, and no documents or knowledgeable employees are located in Delaware.[20] Mr. Jaynes swears Apple only has one retail store in Delaware which sells the iPad 4 containing the alleged infringing inductors.[21] Mr. Jaynes swears he is not aware of any employees with knowledge of the inductors or any relevant documents located in Delaware.[22]

## II.     Analysis

Apple moves to transfer venue to the Northern District of California. As we held in our August 9, 2017 memorandum, venue over this patent infringement claim is proper in this District give sale of iPad 4 devices in Apple's Delaware retail store.[23] MEC does not dispute venue is also proper in the Northern District of California. We may transfer venue under 28 U.S.C. § 1404(a) if we find it appropriate "[f]or the convenience of parties and witnesses, in the interests of justice." Because we do not "lightly disturb" Prowire's choice of venue, Apple bears the burden of establishing venue in the Northern District of California better serves the interests of justice and is the more convenient venue.[24]

### A. Applying *Jumara* factors warrants transfer.

In *Jumara v. State Farm Ins. Co.*, our court of appeals defined the relevant private and public interests we must consider when exercising our discretion under 1404(a). Private interests are "the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the

location of the books and records. The relevant public interests are: 'the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora.'".[25] Applying these factors to the sworn facts, we are compelled to transfer venue.

### 1. *Jumara* private interest factors weigh in favor of transfer.

The private interest factors weigh in favor of transfer.

#### a. **Prowire's forum of preference.**

While we accord deference to Prowire's choice, "deference given to the plaintiff's choice is reduced when the chosen venue is not the plaintiff's home forum."[26] In *MoneyCat Ltd v. PayPal, Inc.*, an Israeli company which did not do business in the United States and had no apparent ties to Delaware law sued a company incorporated with its principal place of business in San Jose, California.[27] Plaintiff argued Delaware is more convenient because it is a shorter trip from Israel to Delaware than to California.[28] The court granted defendant's motion to transfer venue and gave the plaintiff's forum preference less deference because "whatever marginal additional inconvenience will be inflicted on [plaintiff] by having to litigate in California is outweighed by transferring this case to the place where the bulk of the evidence exists."[29]

MEC (having recently substituted in for Prowire) cites numerous cases is asking we defer to Prowire's choice of venue where the plaintiff is a foreign corporation or where Delaware is not the plaintiff's home turf. Our review shows every case cited by MEC involves a party with ties to Delaware. No cited case addresses our situation where neither party is incorporated or has a principal place of business in Delaware.[30] MEC relies on *Simms* and

*Cypress Semiconductor* to argue we should afford deference to Prowire's choice if it has rational, legitimate reasons for its choice; *Simms* involved a plaintiff residing in Delaware and *Cypress Semiconductor* involved a plaintiff incorporated in Delaware.[31] Prowire has no ties to Delaware and is formed in Texas.   MEC has no ties to Delaware and its place of formation, North Dakota, is geographically closer to the Northern District of California than here.   The bulk of the evidence is likely located in the Northern District of California and Taiwan.   Prowire's initial preference (now adopted by MEC) for Delaware weighs minimally against transferring venue.

### b.   Apple's forum preference.

Apple prefers to litigate in the Northern District of California where it is incorporated and has its principal place of business.   Apple's preference weighs in favor of transferring venue but we accord its preference less weight than Prowire's or MEC's preference (which we accord less deference than usual).[32]

### c.   Whether the claim arose elsewhere.

Under 35 U.S.C. § 271(a), Apple's claims arose "wherever someone has committed acts of infringement" but courts hold "infringement claims, however, have even deeper roots in the forum where the accused products were developed."[33]   Apple sells its allegedly infringing products to customers from its retail store in Delaware so claims do arise here.[34]   Apple declares, and MEC does not dispute, the alleged infringing inductors are manufactured in Taiwan and the design, research, and employees who designed the iPad4 which contains the allegedly infringing inductors are in Cupertino, California.   This factor weighs in favor of transfer because MEC's claims have "deeper roots" in the Northern District of California where Apple designed and decided to incorporate the alleged infringing inductors from Taiwan.[35]

### d. The convenience of the parties.

We consider the "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."[36]

Neither party is formed or has a principal place of business in Delaware. MEC is located in North Dakota which is geographically closer to the Northern District of California than this District, with one employee located in Michigan and another located in North Dakota. MEC's two employees will travel to trial whether it is here or in the Northern District of California. MEC's two employees argue Delaware is more convenient than the Northern District of California but do not explain why.

Apple's relevant employees are located in Cupertino, California. The associated logistical and operational costs for Apple's employees to travel to Delaware would be complicated and more expensive than trial in the Northern District of California.

MEC argues Apple as a multibillion corporation is not burdened by litigating in Delaware. The parties' financial wherewithal is a neutral consideration because litigation in Delaware is not a burden on Apple and Prowire already choose to litigate in a place where it is not located accepting the costs of travel. MEC bought these rights knowing it of this suit in this District.

Overall, this factor weighs in favor of transfer because the parties' physical locations are not convenient to Delaware and MEC's litigation costs will likely remain the same because its two employees must travel even if we do not transfer venue.

### e. The convenience of the witnesses.

We consider the convenience of the witnesses "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."[37] We do not consider witnesses employed by the parties but necessary third party witnesses outside the parties' control.[38]

Apple argues this factor weighs in favor of transfer because none of the inventors of the patents-in-suit reside in Delaware; they reside in Taiwan and the attorney for the patent-in-suit is in Hawaii. Apple argues the Northern District of California is closer and more convenient for the witnesses traveling from Taiwan and Hawaii. MEC argues Apple does not show any of these witnesses would not attend trial. We do not "require such a clear statement—it is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power."[39] Neither district enjoys subpoena power over the third party witnesses.

This factor is neutral.

### f. The location of books and records.

We consider the location of books and records "limited to the extent that the files could not be produced in the alternative forum."[40] In infringement cases, the "'bulk of relevant evidence' using comes from the accused infringer, such that the location of the [accused infringer's] documents can favor transfer."[41] While technology reduces the importance of this factor, the Court of Appeals for the Federal Circuit cautions "it is improper to ignore them entirely."[42]

Apple designed and developed the product containing the allegedly infringing inductor in Cupertino, California which is also its principal place of business so "it is reasonable to presume that much of the evidence will be found there."[43] Relevant documents from the patent inventors

are likely located in Taiwan or Hawaii. Neither party argues there are relevant documents in this District. This factor weighs in favor of transfer.

### 2. *Jumara* public interest factors weigh in favor of transfer.[44]

The public interest factors weigh in favor of transfer.

#### a. The enforceability of the judgment.

The parties do not address this issue because a judgment in this District and the Northern District of California are equally enforceable so this factor is neutral.

#### b. Practical considerations for trial.

We consider "practical considerations that could make trial easy, expeditious, or inexpensive."[45] Because Apple's principal places of business and the bulk of their employees are in the Northern District of California, we can fairly assume trial would be more inexpensive there. MEC's witnesses, the patent inventors and attorney, are likely located in Taiwan which is closer (and assumedly cheaper) to the Northern District of California than here. We are not persuaded by an alleged higher cost of living in the Northern District of California outweighs the proximity of the California venue to all parties and the evidence. This factor weighs in favor of transfer.

#### c. The relative administrative difficulty in the two fora resulting from court congestion.

While neither party addresses this factor, we do because this District is now reduced to two active district court judges with judges from other busy districts sitting as visiting judges to help address the busy docket until new district court judges are sworn. The Northern District of California has a full bench of talented district court judges experienced in patent litigation. As of the March 31, 2017 Reporting Period, 6.2% in the docket of the Northern District of California is over three years old compared to 13.4% in this District.[46] While both Districts are busy and

8

known for their patent experience, this District is ranked 17th in the United States for weighted filings per judge (based on <u>four</u> judges as of March 31, 2017) while the Northern District of California is ranked 23rd based on fourteen judges as of March 31, 2017. This District is now reduced to two active judges, only increasing the number of cases on each judge's docket here. While visiting judges can assist, we also must manage our busy urban dockets and, as much as we may try, cannot fully mitigate the loss of experienced judges in this District while we await commissions for new district court judges. Given the limited resources, we find it difficult to justly allocate judicial resources in this District to resolve a dispute between California and North Dakota citizens where there is no connection here other than Apple's single retail location. As we found on August 9, 2017, Apple's retail store allows venue under the presently expansive interpretation of patent venue, but this District is not a convenient venue. This factor weighs in favor of transfer.

### d.     The local interest in deciding local controversies at home.

"This factor is typically neutral in the context of patent litigation, as 'patent issues do not give rise to a local controversy or implicate local interests.'"[47] MEC brings only federal patent law claims and we find this factor neutral.

### e.     The public policies of the fora.

This factor is neutral because MEC brings federal patent claims which are the resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence in this District and in the Northern District of California.

### B.     MEC's equitable argument is not applicable.

Outside of the *Jumara* factors, MEC argues Apple's motion as a matter of fairness should be denied because Apple waited six months after being sued and after we denied Apple's

motion for improper venue to move to transfer under § 1404. MEC argues transfer would "set this case back months" and "much of the early work would need to be re-done."[48] We see no basis for this alarmist concern.

Apple did not waive its ability to move under § 1404 by failing to move by a certain time, unlike a Fed. R. Civ. P. 12(b)(3) motion for improper venue which must be raised with a responsive pleading. "A motion to transfer should be made early in the proceeding. However, a mere passage of time or delay is not alone sufficient to deny a motion to transfer."[49]

We review the six months between filing and the transfer motion to determine if this six month "delay" causes MEC undue prejudice, increases litigation expenses, or if Apple is otherwise engaging in dilatory tactics.[50] Prowire sued Apple on March 2, 2017 and effected service on March 7, 2017.[51] The Clerk of Court assigned the case to the "Vacant Judgeship" docket on March 8, 2017.[52] Prowire agreed Apple could respond by May 8, 2017.[53] Prowire's decision accounts for two months of the six month delay. Apple timely moved to dismiss and Prowire amended the complaint on May 11, 2017.[54] Apple moved to dismiss on May 25, 2017 and the motion ripened on June 29, 2017. The lack of an Article III judge assigned to the case accounts another month of the six month delay. The Clerk re-assigned this case on July 25, 2017 and we denied Apple's motion to dismiss on August 9, 2017.[55] We ordered discovery to begin on August 10, 2017 and the parties to appear for a pre-trial conference.[56] Apple moved to transfer venue on August 29, 2017.

Apple could have moved to transfer venue coterminous with moving for improper venue on the First Amended Complaint. We cannot say Apple's decision to wait until after we ruled on its Rule 12 motions is a dilatory tactic. Prowire agreed to give Apple extra time to respond and a month of delay is due to factors outside of either party's control.

Transferring venue at this early stage in litigation will not increase costs or "re-start" the case. The parties just began discovery and the same discovery rules apply in the Northern District of California. Other than *pro hac vice* motions, we cannot think of work the parties will need to re-do after transfer. Apple cannot move under Rule 12 again. The transfer will not cause undue prejudice to MEC because this litigation remains in its early stages.[57] We expect the Northern District of California will promptly schedule the discovery close and trial as we would.

### III. Conclusion

In the accompanying Order, we grant Apple's motion to transfer venue under § 1404(a) based on our fact specific review of the *Jumara* private and public interest factors weighing decidedly in favor of transfer.

---

[1] Amended Complaint, ECF Doc. No. 13, ¶ 7.

[2] *Id.* ¶ 9.

[3] *Id.* ¶ 1.

[4] Harrits Declaration, Exhibit 11, ECF Doc. No. 58-1 at 64.

[5] *Id.*

[6] Harrits' Declaration, Exhibit 2, ECF Doc. No. 58-1 at 5.

[7] Plaintiff's Unopposed Motion to Substitute Parties, ECF Doc. No. 60 at 1.

[8] Plaintiff's Response to Motion to Transfer, ECF Doc. No. 70 at 7.

[9] Harrits' Declaration, ECF Doc. No. 58, ¶¶ 19-20.

[10] O'Berry Declaration, ECF Doc. No. 73, ¶ 1; Driscoll Declaration, ECF Doc. No. 71, ¶ 1.

[11] Driscoll Declaration, ECF Doc. No. 71, ¶ 6.

---

[12] *Id.*

[13] *Id.* ¶ 5.

[14] O'Berry Declaration, ECF Doc. No. 73, ¶ 5.

[15] Jaynes Declaration, ECF Doc. No. 57, ¶ 3.

[16] *See* Exhibit 1 to Katz Declaration, ECF Doc. No. 72-1 at 2; Jaynes Declaration, ECF Doc. No. 57, ¶ 20

[17] *Id.* ¶ 5.

[18] *Id.* ¶ 9.

[19] *Id.* ¶¶ 12-14.

[20] *Id.* ¶¶ 12-15, 18.

[21] *Id.* ¶ 21.

[22] *Id.* ¶ 22.

[23] ECF Doc. No. 46.

[24] *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

[25] *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-733, 2017 WL 1536394, at *2 (D. Del. Apr. 27, 2017) (quoting *Jumara*, 55 F.3d 879-80).

[26] *MoneyCat Ltd v. PayPal, Inc.*, No. 13-1358, 2014 WL 2042699 at *4 (D. Del. May 15, 2014) (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)).

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *See Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.*, No. 16-290, Slip. Op. at 1 (D. Del. March 29, 2017) (defendant is a Delaware corporation); *Cellectis, S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 377 (D. Del. 2012) (defendant is a Delaware corporation); *Intellectual Ventures LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 748-49 (D. Del. 2012) (plaintiff and defendant are Delaware corporations); *Tessera Inc. v. Sony Electronics Inc.*, No. 10-838, 2012 WL 1107706 at *1 (D. Del. March 30, 2012) (plaintiff and defendant are Delaware

corporations); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,* No. 01-199, 2001 WL 1617186 at *1 (D. Del. Nov. 28, 2011) (plaintiffs are Delaware corporations); *Simms v. Thomason Reuters Tax and Accounting, Inc.,* No. 10-904, 2011 WL 4501225 at *1 (D. De. Sept. 28, 2011) (plaintiff is an individual residing in Delaware suing her employer); *Everglades Interactive, LLC v. Playdom, Inc.,* No. 10-902, 2011 WL 2294075 at *1-2 (D. Del. June 8, 2011) (almost all defendants are Delaware corporations); *Academish Ziekenhuis Leiden v. Cardoimems, Inc.,* No. 10-1127, 2011 WL 864911 at *1 (D. Del. March 9, 2011) (defendant is a Delaware corporation); *Carl Zeiss Meditec, Inc.v. Xoft, Inc.,* No. 10-308, 2010 WL 4024603 at*1 (D. Del. Oct. 13, 2010) (defendant is a Delaware corporation).*ML Lee Acquisition Fund II L.P.*, 816 F. Supp. 973, 975 (D. Del. 1993) (several defendants are Delaware corporations or limited liability companies); *Pennwalt Corp. v. Purex Indus., Inc.,* 659 F. Supp. 287, 288 (D. Del. 1986) (defendant is a Delaware corporation).

[31] *See Simms*, 2011 WL 4501225 at *1; *Cypress Semiconductor*, 2001 WL 1617186 at *1.

[32] *See Memory Integrity, LLC v. Intel Corporation*, No. 13-1804, 2015 WL 632026 at * 3 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012)) (finding defendant's forum preference weighs in favor of transfer but giving it "limited weight").

[33] *Id.* (citing *Intellectual Venture*, 842 F. Supp. 2d at 759).

[34] *See* Memorandum, ECF Doc. No. 46.

[35] *See Memory Integrity*, 2015 WL 632026 at * 3 (citing *Intellectual Venture*, 842 F. Supp. 2d at 759).

[36] *Id.* at *4 (quoting *Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012) (internal citation omitted)).

[37] *Id.* (quoting *Jumara*, 55 F.3d at 879).

[38] *See Audatex North America, Inc. v. Mitchell International, Inc.*, No.12-139, 2013 WL 3293611 at *5 (D. Del. June 29, 2013).

[39] *Id.*

[40] *Id.* at 6 (quoting *Jumara*, 55 F.3d at 879).

[41] *Id.*

[42] *In re Link_A_Media*, 662 F.3d at 1223.

[43] *See Audatex*, 2013 WL 3293611 at *6.

---

[44] We do not address the 6th *Jumara* factor, the familiarity of the trial judge with the applicable state law in diversity cases because this case only has federal patent law claims.

[45] *Smart Audio*, 910 F. Supp. 2d at 732.

[46] United States District Court—National Judicial Caseload Profile, Reporting Period March 31, 2017, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2017.pdf (last visited July 31, 2017).

[47] *Smart Audio*, 910 F. Supp. 2d at 73733 (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)).

[48] Plaintiff's Response to Motion to Transfer, ECF Doc. No. 70 at 5.

[49] *Blumenthal v. Management Assistance, Inc.*, 480 F. Supp. 470, 471 (N.D. Ill. 1979) (denying defendant's motion to transfer venue after considering numerous factors, including the fact defendant waited three years after ligation commenced to move for transfer).

[50] *See id.* (internal citation omitted) (holding "the court may order a transfer whenever the circumstances satisfy the requirement of the section unless the delay would unduly prejudice the other party, increase the expense of litigation or the late motion is merely a dilatory tactic").

[51] *See* ECF Doc. Nos. 1, 4.

[52] The Clerk also referred the case to Magistrate Judge Christopher Burke but Judge Burke cannot decide a dispositive motion (such as a motion to dismiss) without the parties' consent.

[53] *See* ECF Doc. No. 6.

[54] *See* ECF Doc. Nos. 13, 14.

[55] MEC's argument also suggests Apple is engaged in judge shopping after we denied three of Apple's motions. One motion MEC references is our denying Apple's motion to stay discovery pending the outcome of the motion to dismiss on the day we denied Apple's motion to dismiss, August 9, 2017. We denied this motion as moot. *See* ECF Doc. No. 47.

[56] *See* ECF Doc. No. 48.

[57] *See Saleh v. Titan Corp.*, 362 F. Supp. 2d 1152, 1168 (S.D. Cal. March 21, 2005) (finding a 5 month delay not an undue delay because the case is far from trial and in early stages).